IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| George N.S. Jones, Sr., <br> *also known as George S. Jones, Sr.*, <br><br> Plaintiff, <br><br> v. <br><br> Cpt. L. Arnnette; Capt. Brisco; Lt. Hephlin; <br> and C/O Ward, Brian McDonald Hamilton, <br><br> Defendants. <br> _____ | ) C/A No.  9:13-2794-MGL-BM <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **REPORT AND RECOMMENDATION** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Plaintiff, George N.S. Jones, Sr, also known as George S. Jones, Sr. ("Plaintiff"), is a state prisoner housed in the McCormick Correctional Institution ("MCI"), part of the South Carolina Department of Corrections ("SCDC") and located in McCormick, South Carolina. Plaintiff, proceeding pro se and in forma pauperis, brings this civil rights action against Defendants pursuant to 42 U.S.C. § 1983,[1] seeking monetary damages and injunctive relief, for alleged "fraudulent statements and neglect of duty as well as discrimination." Complaint, ECF No. 1, p. 1.



---

[1] Not itself a source of substantive rights, § 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law." See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. See McKnight v. Rees, 88 F.3d 417(6th Cir. 1996). To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); see Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

Under established local procedure in this judicial district, a careful review has been made of the pro se Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915, and in light of the following precedents: Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519 (1972); and Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). The Complaint herein has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. However, to protect against possible abuses of this privilege, the statute also allows a district court to dismiss a case upon a finding that the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B)(i), (ii), (iii). Hence, under 28 U.S.C. §1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed sua sponte. Neitzke v. Williams, 490 U.S. 319 (1989). Further, although this Court is required to liberally construe pro se documents, Estelle v. Gamble, 429 U.S. 97 (1976), holding them to a less stringent standard than those drafted by attorneys, Hughes v. Rowe, 449 U.S. 5 (1980) (per curiam), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dep't. of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). Here, after careful review, the undersigned finds that Plaintiff's Complaint is subject to summary dismissal, without prejudice and without issuance and service of process, because it fails to state a claim on which relief may be granted by this Court.

**BACKGROUND**

Plaintiff alleges as follows, verbatim:



[Plaintiff] was playing cards (Spades) when the chow (food) came in so everyone stop the game. [Plaintiff] went to get the cards off the table and Donald McKey grabbed the cards off the table and threw them on the floor; [Plaintiff] call him a son of a bitch; He got out of the wheelchair and I quote him, "I am going back to my room and get the leg irons to ware your ass out." He came closer to [Plaintiff] and swung at [Plaintiff] with the leg iron; [Plaintiff] knocked it out of his hand and [Plaintiff and McKey] began to post up as boxers do; he swung again at [Plaintiff], [Plaintiff] ducked and he grabbed [Plaintiff's] head and beat to hits and [Plaintiff] hooked him two hits as boxers do, then Ms. Cpl. Arnnette called for 1st response then she changed it and called back that everything was in hand after [Plaintiff] told her what happened and why the leg iron from his room which belonged to his wheelchair was laying on the floor as [Plaintiff] pointed to it.

As for the Discrimination part is when they put [Plaintiff] and locked [Plaintiff] in [Plaintiff's] room, but let Donald McKey out back of his room to play more cards & eat his meals, etc.

The Fraudulent statements are those statements made by The Capt, Brisco, Lt. Hephlin and Cpl. L. Arnnette, who were not there when the fight started, but is trying to take another inmate side because [Plaintiff's] C-Pak Machine stopped last night about or around 12:30 a.m. or 1:30 a.m. and [Plaintiff] told the officer Hall and Nurse Tripline at pill line time in the morning which was about or around 3:45 to 4:00 a.m.

[Plaintiff] ha[s] The Inmate Request To Staff dated 8/1/13 to the Head Nurse Ms. Smalley or Ms. Andrews in which they called the Maintenance Shop to come over here and check the sockets.

[Plaintiff] want[s] the Courts to punish they individuals by awarding [Plaintiff] a Settlement 250,000.00 for them going about the Law and not completely getting the fact, especially those that are right in front of them (which they know and have seen many times to and fro this McCormick Correctional Inst.

That Which Was From The Beginning; That Which [Plaintiff] Ha[s] Experienth; That Which [Plaintiff] Seeth; That Which [Plaintiff] Hearth Of The Word Of Life; That Which [Plaintiff] Giveth Thee.

ORDO-AB-CHAOS

On September 21, 2013 C/O Ward locked [Plaintiff] in [Plaintiff's] Rm. 163-A.L.U. as [Plaintiff] was going in [Plaintiff's] room; [Plaintiff] asked him what [Plaintiff] had done and he did not reply to [Plaintiff] what [Plaintiff] had done only what the Inmates told him which was a conspiracy against [Plaintiff]. As is the Staff of McCormick because [Plaintiff] testified against some Inmate at Lee County

3



>   Correctional Institution for stabbing an Inmate (Johnathan Rowe) on 7/27/08 or 7/27/07.

Complaint, ECF No. 1, p. 3-4.  As to the relief he seeks, Plaintiff alleges, as follows, verbatim:

>   [Plaintiff] want[s] the Courts to stopped letting Cpl. L. Arnnette, Capt. Brisco, and Lt. Hephlim get away with such Neglection and Discrimination without a Jury Trial and let [Plaintiff] face [Plaintiff's] accusers in the Courts, as well as 250,000.00 settlement for Neglection of Duty and Discrimination and pain and suffering by putting me back everytime I get closer to my Parole Date.
>
>   If you look at [Plaintiff's] record you can see the patterned every 3 to 4 years or more closer, it keeps happenned.
>
>   [Plaintiff is] also asking to be appointed a Civil Rights Attorney form the NAACP of the South Carolina or the Atlanta, Ga. Branch.[2]

Complaint, ECF No. 1, p. 5.  Plaintiff alleges that he filed a grievance on August 7, 2013, but did not receive an institutional answer or determination before filing the instant Complaint, on October 15, 2013.  See Complaint, ECF No. 1, p. 2.  Plaintiff alleges that he complained to institutional authorities, in response to the question "What steps did you take?," Plaintiff alleges: "1st step Cpl. L. Arnnette and 2nd Capt. Brisco & Lt. Hephlin."  Id.  In response to the question "What was the result?," Plaintiff alleges: "I was locked in my room while Donald McKey was let out."  Id.

---

[2] Plaintiff has not filed a motion for appointment of counsel in this case.  In any event, the undersigned observes that there is no right to appointed counsel in § 1983 cases.  See Hardwick v. Ault, 517 F.2d 295 (5th Cir. 1975).  The Congress does not appropriate funds to pay attorneys who represent litigants in civil rights cases or in non-capital habeas corpus cases.  53 Comp. Gen. 638 (1974).  Although this economic fact is not conclusively determinative of the issue, it is a practical consideration which cannot be ignored, and while the district court is granted the power to exercise its discretion to appoint counsel for an indigent in a civil action, 28 U.S.C. § 1915(e)(1); Smith v. Blackledge, 451 F.2d 1201 (4th Cir. 1971), such appointment "should be allowed only in exceptional cases."  Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975).  Plaintiff has not demonstrated that this case requires an appointment of counsel under this standard, and after careful review of the pleadings, the undersigned has determined that there are no exceptional or unusual circumstances presented which would justify the appointment of counsel, nor has Plaintiff been denied due process because an attorney has not been appointed.  Whisenant v. Yuam, 739 F.2d 160 (4th Cir. 1984).

4



**DISCUSSION**

Plaintiff's Complaint fails to state a plausible claim on which relief may be granted by this Court. Plaintiff alleges "fraudulent statements and neglect of duty as well as discrimination" on the part of Defendants, due to Defendants' apparent acceptance of Inmate McKey's and/or other inmates' accounts of the altercation between Plaintiff and McKey. Plaintiff complains that he was "locked in [his] room while Donald McKey was let out." However, to the extent that Plaintiff's claim of discrimination is based on Defendants' apparent decision not to charge Inmate McKey in connection with the altercation, it is well settled that Plaintiff has no constitutional right to, or in fact any judicially cognizable interest in, the criminal prosecution or non-prosecution of another person. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); Diamond v. Charles, 476 U.S. 54, 64-65 (1986) (applying Linda R.S. v. Richard D. and collecting cases). Further, with respect to Plaintiff's allegation that the Defendants were negligent, negligence, in general, is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995). Additionally, this District Court and other courts which have addressed the issue have found that there is no cause of action for negligent investigation under § 1983 on the basis that deliberate acts are required. See Carter v. Bone, Civil Action No. 3:09-779-CMC-JRM, 2010 WL 558598 at *6 (D.S.C., Feb. 10, 2010); Von Williams v. City of Albany, 936 F.2d 1256, 1260-61 (11th Cir. 1991); Williams v. City of Bridge City, Tex., 588 F. Supp. 1187, 1190 (E.D.Tex. 1984); Merrell v. Duffy, 1992 WL 168010 (E.D.Pa. 1992) (a claim of negligent investigation does not rise to the level of constitutional violation which may be asserted under § 1983).

5



Plaintiff also alleges that the Defendants, specifically Defendant Ward, locked him in his room based on statements made by other inmates as a result of a conspiracy against him. However, generalized allegations of a civil conspiracy are not sufficient to maintain a claim under § 1983. See Wetherington v. Phillips, 380 F. Supp. 426, 428-429 (E.D.N.C. 1974), aff'd., 526 F.2d 591 (4th Cir. 1975). "To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right." Marshall v. Odom, 156 F.Supp. 2d 525, 532 (D. MD. 2001), citing Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir.1996). Here, Plaintiff makes no such factual allegations. Nor does Plaintiff allege that he was charged with any disciplinary infraction as a result of his altercation with McKey, or that any disciplinary sanction was ever imposed upon Plaintiff as a result of the altercation, which would be sufficient to implicate a constitutionally protected liberty interest.[3]

To the extent that Plaintiff attempts to state a due process claim, this Court recognizes that the due process clause protects a prisoner from being arbitrarily punished. See Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (finding that due process protects individuals against arbitrary action of government). However, Plaintiff's factual allegations fail to establish that being locked in his room for an unspecified period of time was the result of any disciplinary action on the part of

---

[3] The undersigned can take judicial notice that Plaintiff's SCDC inmate record shows that Plaintiff did not receive a disciplinary conviction or even a disciplinary charge in connection with the facts alleged here, as Plaintiff's SCDC record indicates no disciplinary convictions from January 2009 to the present time. See SCDC Incarcerated Inmate Search Website, http://public.doc.state.sc.us/scdc-public/ (last visited Dec. 4, 2013); In Re Katrina Canal Breaches Consol. Litig., 533 F. Supp. 2d 615, 631-33 & nn.14-15 (E.D. La. 2008) (collecting cases indicating that federal courts may take judicial notice of governmental websites); Williams v. Long, 585 F. Supp. 2d 679, 686-88 & n.4 (D. Md. 2008) (collecting cases indicating that postings on government websites are inherently authentic or self-authenticating).



Defendants, much less that the disciplinary action resulted in the loss of any constitutionally protected liberty interest, such as any of Plaintiff's accrued "good time" credits,[4] or the imposition upon Plaintiff of any atypical and significant hardship in relation to the ordinary incidents of prison life.

Under Sandin v. Conner, 515 U.S. 472, 484 (1995), a prisoner's limited right of due process is required *only* when a prison disciplinary action "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," which, in this circuit, has been held *not* to include disciplinary detention or segregated confinement. Assignment to disciplinary or administrative segregation does not by itself implicate Fourteenth Amendment due process rights; therefore, even if Plaintiff's Complaint alleged or his SCDC record showed that he had been subjected to such disciplinary or administrative segregation, such facts would not implicate a protected liberty interest. See Sandin, 515 U.S. at 483-84; Backey v. South Carolina Dep't. of Corrections, 73 F.3d 356 (4th Cir. 1996) (allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); Joseph v. Gillespie, 73 F.3d 357 (4th Cir. 1995) ("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); Reffritt v. Nixon, 917 F.Supp. 409, 412 (E.D.Va.1996) (plaintiff has no protected interest in remaining in or being released into general population); Keeler, 782 F. Supp. at 44 (D.S.C. 1992) ("Segregation is one of the conditions of confinement typically contemplated when a person receives a prison sentence; therefore, it is neither

---

[4] Under Wolff, minimal due process is required when good time credits are taken away; see O'Bar v. Pinion, 953 F.2d 74 (4th Cir. 1991), AI-Shabazz v. State, 338 S.C. 354, 527 S.E. 2d 742 (2000).



cruel and unusual, nor is it a violation of due process." (citing Meachum v. Fano, 427 U.S. 215 (1976)); Gregory v McKennon, 430 F. App'x 306 at *4 (5th Cir. June 22, 2011) (Affirming dismissal where plaintiff did not implicate a constitutionally protected liberty interest where he was sentenced to segregation and the loss of various privileges after a disciplinary hearing, but alleged no loss of good time credits); Scott v. Hobbs, No. 12-245, 2013 WL 1662965 at *3 (E.D.Ark. Apr. 1, 2013) (plaintiffs claim of denial of due process in his disciplinary hearing did not state a constitutional claim because no loss of good time credit); adopted by, 2013 WL 1662957 (E.D.Ark. Apr. 17, 2013); Crumbley v. Dawson, No. 09-14, 2011 WL 917412 at * 6 (E.D.Tex. Feb. 17, 2011) (No due process violation where disciplinary hearing did not result in loss of a constitutionally protected liberty interest).

Additionally, it is well settled that the placement of inmates into administrative segregation units or similar units is a valid means of minimizing a "threat to security of the institution, threat to the safety of other residents or jail staff, etc." Jackson v. Bostick, 760 F. Supp. 524,528 (D. Md. 1991); Anderson v. County of Kern, 45 F.3d 1310, 1312 (9th Cir. 1995) (prison officials have legitimate penological interest in administrative segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"). Therefore, administrative segregation is not per se cruel and unusual punishment under the Eighth Amendment. See Allgood v. Morris, 724 F.2d 1098, 110 1 (4th Cir. 1984) (segregated protective custody); Ross v. Reed, 719 F.2d 689, 697 (4th Cir. 1983) (administrative segregation).

To the extent that Plaintiff's Complaint attempts to state an equal protection claim, the Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Under the Equal Protection



Clause the government is prohibited from engaging in discrimination which: (1) burdens a fundamental right; (2) targets a suspect class; or (3) "intentionally treats one differently than others similarly situated without any rational basis for the difference." TriHealth, Inc. v. Bd. of Comm'rs, 430 F.3d 783, 788 (6th Cir. 2005) (citation omitted). The third prong, commonly known as a class-of-one theory, requires a plaintiff to prove that he was intentionally treated differently from other similarly situated individuals without a rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). A plaintiff establishes that government action lacks a rational basis "either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." TriHealth, Inc., 430 F.3d at 788 (citation omitted).

The purpose of the Equal Protection Clause is to protect persons from intentional and arbitrary discrimination. See Willis v. Town of Marshall, 426 F.3d 251, 263 (4th Cir. 2005). However, when reviewing an equal protection claim in the prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. In such instances, a prisoner claiming an equal protection violation must allege facts demonstrating the above and that the disparate treatment is not "reasonably related to any legitimate penological interest." Veney v. Wyche, 293 F.3d 726, 730-32 (4th Cir. 2002). Here, Plaintiff makes no allegation that Defendants treated him differently from similarly situated inmates, generally, or from Inmate McKey, specifically, based on Plaintiff's race, color, religion, national origin, gender, age, or other illegally discriminatory basis, and prisoners are not a protected class. See Hadix v. Johnson, 230 F.3d 840, 843 (6th Cir. 2000). Because Plaintiff has not demonstrated that he is a member of a protected class or that he has suffered the violation



of a fundamental right, heightened or strict scrutiny of the Defendants' action or inaction towards Plaintiff is not warranted. See Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989) ("prisoners are not a suspect class"); Wilson v. Yaklich, 148 F.3d 596, 604 (6th Cir. 1998) (neither indigents nor prisoners are a suspect class); see also Kaummerling v. Lappin, 553 F.3d 669, 685 (D.C. Cir. 2008); Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000) (collecting cases); Carson v. Johnson, 112 F.3d 818, 821 (5th Cir. 1997).

In the instant case Plaintiff has failed to demonstrate that Defendants' different treatment of Plaintiff and Inmate McKey lacks a rational basis and is not reasonably related to legitimate penological interests. Plaintiff has failed to show that Defendants' action was motivated by animus or ill-will. Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. McCleskey v. Kemp, 481 U.S. 279, 292 (1987). Moreover, Plaintiff has also failed to show that he and Inmate McKey are similarly situated in all material respects. In fact, Plaintiff's Complaint specifically alleges that Inmate McKey was in a wheelchair. See Complaint, ECF No. 1, p. 3.

Finally, to the extent that Plaintiff may be attempting to set forth a cause of action based in state law, this Court does not have jurisdiction to hear it. Federal courts are allowed to hear and decide state-law claims only in conjunction with federal-law claims, through the exercise of "supplemental jurisdiction." See 28 U.S.C. §1367; Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 387 (1998). Since Plaintiff has asserted no valid federal claim, this Court cannot exercise "supplemental" jurisdiction over Plaintiff's state claim, if any. See Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999) ['"[T]he Constitution does not contemplate the federal judiciary deciding



issues of state law among non-diverse litigants"]. While a civil action for a state law claim would be cognizable in this Court on its own under the federal diversity statute, that statute requires complete diversity of parties and an amount in controversy in excess of seventy-five thousand dollars ($75,000.00). See 28 U.S.C. § 1332(a). Complete diversity of parties in a case means that no party on one side may be a citizen of the same State as any party on the other side. See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 372-374 (1978). Here, Plaintiff's Complaint and proposed service documents indicate that the parties to this action are all residents of South Carolina, so diversity of citizenship does not exist. Accordingly, this Court has no diversity jurisdiction over this case.

## RECOMMENDATION

Based on the foregoing, it is recommended that the Court dismiss Plaintiff's Complaint without prejudice and without issuance and service of process. Plaintiff's attention is directed to the important notice on the next page.

December 12, 2013                           Bristow Marchant
Charleston, South Carolina                  United States Magistrate Judge

11



### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections**.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk of Court
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

12

